IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02858-RM-MJW

GLENN PICCO and
FRANCINE PICCO,

Plaintiff(s),

v.

KELLY R. GLENN, D.O.,
VALLEY VIEW HOSPITAL ASSOCIATION, and
GLENWOOD MEDICAL ASSOCIATES,

Defendant(s).

---

**ORDER REGARDING DEFENDANT VALLEY VIEW HOSPITAL ASSOCIATION'S
MOTION TO ENFORCE SETTLEMENT AGREEMENT
(DOCKET NO. 174)**

---

**Entered by Magistrate Judge Michael J. Watanabe**

This matter was before this court on April 2 and 3, 2015, for hearing on

Defendant Valley View Hospital Association's Motion to Enforce Settlement Agreement

(docket no. 174). The court has reviewed the subject motion (docket no. 174) and the

response (docket no. 204).  In addition, the court has considered the testimony and

credibility of Becky Winter, Kelly R. Glenn, D.O., Sylver Brown, David Penrod, and Beth

Chow.  Furthermore, the court has reviewed and considered all of the exhibits received

into evidence during this hearing, taken judicial notice of the court's file, and has

considered applicable Federal Rules of Civil Procedure and case law.  The court now

being fully informed makes the following findings of fact, conclusions of law, and order.

2

**FINDINGS OF FACT**

The court finds:

1.     That I have jurisdiction over the subject matter and over the parties to this lawsuit;

2.     That venue is proper in the state and District of Colorado;

3.     That each party has been given a fair and adequate opportunity to be heard;

4.     That in the subject Motion, Defendant Valley View Hospital Association ("VVH") seeks the enforcement of the settlement agreement between Plaintiffs and Defendant VVH. This case was mediated on March 7, 2014, and at that time a settlement was reached between Plaintiffs and Defendant VVH;

5.     That a document entitled "Basic Terms of Settlement" (**Defendant VVH Exhibit 1**), which listed the terms of the settlement, was signed by both parties at the mediation on March 7, 2014;

6.     That the special terms and conditions included "Counsel for VVH agrees to provide the complete VVH audit trail for Glenn Picco, if in existence," which was agreed to by all settling parties;

7.     That the existence and validity of the Basic Terms of Settlement is not in dispute;

8.     That the term of the Basic Terms of Settlement that is in controversy here is the undertaking of Defendant VVH to produce

3

to Plaintiffs *"the complete audit trail for Glenn Picco, if in existence;"*

9.   That Defendant VVH does not deny that a complete audit trail for Glenn Picco exists;

10.   That because Defendant VVH does not deny the existence of an audit trail for Glenn Picco, Defendant VVH is bound by the terms of the Basic Terms of Settlement to produce to Plaintiffs the complete audit trail for Glenn Picco;

11.   That a complete audit trail should show every person who accessed Mr. Picco's record and show what specific activity they carried out within the record.  The documents produced to date do not satisfy this request;

12.   That Defendant VVH contends that the complete audit trail for Mr. Picco consisted of the audit view (**Defendant VVH Exhibit 6**), the transcription changes (**Defendant VVH Exhibit 19** and **Plaintiffs' Exhibit E**), and Mr. Picco's electronic medical record;

13.   That Defendant VVH represents that a complete audit trail can be assembled by means of a painstaking comparison of entries and notations to be found in a combination of documents they have produced and the Electronic Medical Record ("EMR"), which they have never produced nor allowed Plaintiffs to have access;

14.   That Defendant VVH's contention that they have satisfied the Basic

4

Terms of Settlement by providing Plaintiffs with materials constituting "building blocks" with which Plaintiffs might themselves assemble a complete audit trail is inadequate, because of the aforementioned lacunae in those produced materials on which Plaintiffs are urged to rely (i.e., date limitations, user exclusions, etc.);

15.   That the materials Defendant VVH has produced to Plaintiffs do not constitute, alone or in combination, an audit trail;

16.   That Defendant VVH's assertion that an audit trail can only be pieced together as described above contradicts its own policies on auditing;

17.   That, at all times mentioned herein, Defendant VVH had certain policies relating to auditing;

18.   That Defendant VVH had an Audit Logging Policy (**Plaintiffs' Exhibit G**), the purpose of which was listed as "[t]o establish guidance for recording a user's activity, user exceptions, and information security events to assist in investigations and access control monitoring," the scope of this policy applied "to all information systems storing or transmitting confidential information," and the responsibility for this policy was all hospital staff, physicians, and volunteers;

19.   That the EMR is not referenced at all in the Audit Logging Policy

directly or indirectly, and, notably, section 1.0(1) indicates:
"Information systems processing confidential information shall
create a secure audit record each time a user accesses, creates,
updates, or archives confidential information via the system," and
1.0(2) of this policy states: "The audit logs shall include: a unique
user identifier; a unique data subject (e.g. the patient) identifier; the
function performed by the user (e.g. log-in, record creation, access,
update, etc.); and the time and date that the function was
performed."  **(Plaintiffs' Exhibit G)**;

20.    That, at all times mentioned herein, Defendant VVH also had an
Access Control Policy (**Plaintiffs' Exhibit J**), the purpose of which
was "to control access to information, information assets, and
hospital processes based on business and security requirements,"
and the responsibility was "[a]ll hospital staff, physicians, vendors,
volunteers.";

21.    That Defendant VVH also had a policy entitled "Medical Staff and
Employee access to HIPAA audit trail" (**Plaintiffs' Exhibit N**) with
the purpose to "provide access to appropriate personnel of audit
results" and a scope to "provide documentation of audit trail to
Medical Staff and/or Employees requesting such," and that this
policy had attached to it "REQUEST FOR AUDIT TRAIL REVIEW –
A" (**Plaintiffs' Exhibit L**);

6

22. That the Medical Staff and Employee Access to HIPAA audit trail policy defines "Audit Trail" as "the summary report of all activity per medical record number and/or visit number including PCI information;"

23. That nowhere within the Medical Staff and Employee Access to HIPAA audit trail policy is the patient's electronic medical record mentioned or incorporated by reference;

24. That Defendant VVH had a policy entitled "Access Control Policy" **(Plaintiffs' Exhibit J**), the purpose of which was "to control access to information, information assets, and hospital processes based on business and security requirements" and applied to "all personnel with a Valley View Hospital-owned or personal-device connected to Valley View Hospital's network;"

25. That the Access Control Policy defined authorized access pursuant to HIPAA.;

26. That the aforementioned policies produced by Defendant VVH show either: (1) that the documents Defendant VVH has produced are not in fact the documents it creates and stores relating to audit trails, or (2) that Defendant VVH did not follow its own policies, viz., the audit view produced does not delineate the function performed by the user;

27. That, at all points in time, Defendant VVH and its providers, including employees, have the exclusive control of Mr. Picco's

EMR, which Plaintiffs have never been permitted to inspect;

28.  That, at all points in time, Defendant VVH and its providers, including employees, have been in the exclusive control of Mr. Picco's paper medical record;

29.  That, at all points in time, Defendant VVH and its providers, including employees, have been in the exclusive control of all audit information relating to Mr. Picco's medical record;

30.  That, at all points in time, Defendant VVH and its providers, including employees, have been in the exclusive control of any database(s) containing Mr. Picco's electronic medical information;

31.  That Dr. Glenn's name does not appear in the 106-page "Patient Audit View – Detail by User," while Michael Stahl, M.D., Mr. Picco's treating physician for January 1, 2011, does appear in the 106-page "Patient Audit View – Detail by User," namely on January 1, 2011, January 2, 2011, and January 10, 2011;

32.  That Nurse Brown does appear in the "Patient Audit View – Detail by User" with multiple "views" pertaining to her care and treatment of Mr. Picco on December 25, 2010;

33.  That Nurse Brown does appear as a "view" in the "Patient Audit View – Detail by User" with multiple "views" entries on January 1, 2011, and January 2, 2011, when she was not caring for Mr. Picco;

34.  That Nurse Brown was not the nurse who cared for Mr. Picco on January 1, 2011;

8

35.    That Nurse Brown accessed Mr. Picco's January 1, 2011, EMR
       (Acct V31275837) on January 1, 2011, at 20:00:53, hours after Mr.
       Picco had been transferred to St. Mary's Hospital & Regional
       Medical Center;

36.    That Nurse Brown accessed Mr. Picco's December 25, 2010, EMR
       (Acct V31262181) on January 1, 2011, at 20:01:05 and, according
       to the audit view, she is noted to have accessed both charts;

37.    That Nurse Brown accessed Mr. Picco's December 25, 2010, EMR
       on January 2, 2011, at 00:52:38;

38.    That Nurse Brown could not explain why she accessed Mr. Picco's
       medical chart on January 1, 2011, and January 2, 2011, and the
       circumstances surrounding those accesses;

39.    That Nurse Brown does not remember, and cannot explain, what
       actions she was performing in Mr. Picco's electronic medical record
       on January 1, 2011, and January 2, 2011;

40.    That Plaintiffs first requested the complete audit trail from
       Defendant VVH for Mr. Picco starting on August 7, 2013. *See*
       **Plaintiffs' Exhibit Y** at p. 1;

41.    That, on October 21, 2013, Defendant VVH produced a 106-page
       document entitled "Patient Audit View – Detail by User." *See*
       **Defendant VVH Exhibit 6**;

42.    That the Patient Audit View – Detail by User produced on October

9

21, 2013, is not the audit trail for Mr. Picco, but rather, is a report

derived from the audit trail, which contains only a subset of the

information actually available in the audit trail itself;

43.    That other reports are also available to be derived from the audit

trail, such as the dictation audit reports (**Defendant VVH Exhibit 19**

and **Plaintiffs' Exhibit E**);

44.    That the complete audit trail cannot be obtained via printed reports,

but rather, is obtained by examination of the audit databases and

extraction of audit data specific to Mr. Picco;

45.    That Glenn Picco's complete audit trail should include the record of

all activity in Mr. Picco's electronic health information and is not

limited to the record of activity in any single software application or

user interface;

46.    That the printed report produced entitled "Patient Audit View –

Detail by User" does not constitute a complete audit trail for Mr.

Picco because it represents only some activity from within the

Meditech system, and additionally, that this document is not a

complete "Patient Audit View – Detail by User" report, inasmuch as

it was subject to an artificial data limitation, encompassing dates

between December 25, 2010, through December 31, 2011, and

Defendant VVH has subsequently refused to produce the complete

document up to either the present or the date when the report was

run;

47.   That Plaintiffs never agreed that Defendant VVH could limit the time

parameters of the audit information produced, but instead, have

consistently requested what the Terms of Settlement require: the

complete audit trail;

48.   That at all times mentioned herein, the complete audit view report,

at least up to and including the date of mediation, March 7, 2014,

has been readily available and could have been produced to

Plaintiffs;

49.   That the audit "view" report was also subject to a limitation within

the electronic system by which all actions would appear as "views"

even when they was in fact some other type of action, and as such,

none of the other types of actions (i.e., creations, modifications,

accesses, and deletions) carried out in the EMR are

documented on the "audit view;"

50.   That in November 2011, an upgrade was made to the Meditech

system, following which the results of the audit view report were

able to provide additional detail about actions within the Meditech

system.  Plaintiffs have been prevented from seeing the audit view

report for the time period after this upgrade, with the exception of

the four (4) additional pages (**Defendant VVH Exhibit 24**)

produced subsequent to defense expert Becky Winter's site visit in

February 2015;

11

51.    That even if Defendant VVH's assertion about the combination of

documents making up a complete audit trail is true, Defendant VVH

has not produced a complete audit trail, by its own definition,

because (1) the audit view report is incomplete and subject to an

arbitrary date limitation, (2) the EMR has never been produced to

Plaintiffs or made available for their inspection, and (3) audit reports

for every dictation in the chart have not been produced.  For

example, no audit reports have been produced for the dictations of

the chest x-ray report from December 25, 2010 (**Plaintiffs' Exhibit**

**A-11** at p. 16), the CT of the head from January 1, 2011

(**Plaintiffs'Exhibit A-10** at p. 22), the chest x-ray from January 1,

2011 (**Plaintiffs' Exhibit A-10** at p. 23);

52.    That Plaintiffs realized, after approximately one year of litigation, that

there were still two EKGs missing from the December 25, 2010,

chart produced by Defendant VVH and subsequently contacted

counsel for Defendant VVH to request these documents, which were

then produced to Plaintiffs by Defendant VVH on November 25,

2013.  *See* **Plaintiffs' Exhibit A-9**;

53.    That Beth Chow directed access to another system (not Meditech)

specific to the EKGs in order to produce the missing EKGs;

54.    That the EKGs are another example of Mr. Picco's personal health

information not captured within the audit view produced, which

12

demonstrate that there are other systems besides Meditech that access Mr. Picco's personal health information and were not part of the audit view;

55.   That Meditech is only one of several systems that access personal health information for patients like Glenn Picco;

56.   That all of Mr. Picco's personal health information is stored in the underlying database(s), and not in Meditech;

57.   That subsequent to the March 7, 2014, settlement between the Plaintiffs and Defendant VVH, Plaintiffs continued to attempt to obtain the complete audit trail from Defendant VVH and continued to be told that it did not exist and/or could not be found;

58.   That starting on March 25, 2014, Plaintiffs wrote counsel for Defendant VVH and indicated that if a complete audit trail could not be produced, Plaintiffs requested the title of the person most knowledgeable about the audit trail pursuant to Fed. R. Civ. P. 30(b)(6) and requested dates for that person's deposition.  *See* **Plaintiffs' Exhibit Y** at pp. 6 – 7;

59.   That on May 8, 2014, Plaintiffs continued to request the complete audit trail and the identity of the person most knowledgeable about the audit trail and also requested, in the alternative, that her forensic consultant be allowed to do a site inspection at Valley View Hospital. *See* **Plaintiffs' Exhibit Y** at pp. 11-12;

13

60.   That there was a conference call on May 27, 2014, between

Plaintiffs' counsel, counsel for Defendant VVH, former Valley View

Hospital risk manager, Beth Chow, Pam Hitchcock, and Plaintiffs' IT

consultant;

61.   That as a result of this phone call, on May 29, 2014, Defendant VVH

produced a document showing Dr. Glenn's changes to the

transcription for his December 25, 2010, ER report (**Defendant VVH**

**Exhibit 19**), as well as Dr. Stahl's review and electronic signing of

his transcribed January 1, 2011, ER report (**Plaintiffs' Exhibit E**),

neither of which had previously been produced;

62.   That these transcription changes are not captured within the audit

view, nor are the accesses related to the physicians' signatures

being applied to the transcriptions, nor are other types of access into

the Meditech system, such as access relating to labs and orders;

63.   That Plaintiffs continued to try to resolve this issue with Defendant

VVH throughout the next several months. *See* generally **Plaintiffs'**

**Exhibit Y**, correspondence reflecting these efforts.

64.   That on December 11, 2014, Defendant VVH produced three

additional pages (**Defendant VVH Exhibits 21, 22, and 23**), which

had not been produced previously;

65.   That this matter was set for a Status Conference before this court on

February 11, 2015.  During that conference, an evidentiary hearing

on Defendant VVH's  Motion to Enforce Settlement Agreement (docket no. 174) was set, and the court directed the parties to identify their witnesses;

66.    That at that time, Defendant VVH identified Beth Chow, its risk manager, as the only witness that it expected to call at the evidentiary hearing;

67.    That on February 10, 2015, Defendant VVH filed the Affidavit of Beth Chow signed and notarized on February 10, 2015 (**Defendant VVH Exhibit 17**), with its status report (docket no. 172).  On February 18, 2015, Defendant VVH filed its Motion to Enforce Settlement Agreement (docket no. 174);

68.    That Beth Chow is not a database manager and has no special expertise in databases or database management;

69.    That when Plaintiffs asked for Ms. Chow's deposition, Defendant VVH filed its Motion to Enforce Settlement Agreement (docket no. 174) and disclosed that, since the filing of Ms. Chow's Affidavit, Defendant VVH and Beth Chow had "parted ways;"

70.    That subsequently, on February 25, 2015, VVH disclosed a summary of opinions by its retained expert, Becky Winter, R.N., who is not a database manager and has no special expertise in databases or database management;

71.     That at the time Ms. Winter's report was disclosed, there were four
        additional pages disclosed of the audit "view" for Mr. Picco's charts,
        reflecting that additional information did exist beyond what had been
        produced to Plaintiffs up to that point. *See* **Defendant VVH Exhibit
        24**;

72.     That Ms. Winter's summary of opinions indicated that she was
        allowed a site visit to VVH;

73.     That Plaintiffs had requested a site visit several times starting on
        May 8, 2014, and were denied. *See* generally **Plaintiffs' Exhibit Y**,
        correspondence reflecting these requests;

74.     That as a result of Plaintiffs receiving Ms. Winter's summary
        indicating she was allowed a site visit, Defendant VVH subsequently
        allowed a site visit for Plaintiffs' expert, David J. Penrod, which
        occurred on March 18, 2015;

75.     That Mr. Penrod has been a certified forensic computer examiner
        since 1997.  He has served as the sole certified computer
        investigative specialist for the U.S. Customs Service, Office of
        Investigations, District of Arizona, from 1997 to 2002, and has been
        a private consultant since 2004, with expertise in databases and
        database management. *See* **Plaintiffs' Exhibit A-2**.;

76.     That Plaintiffs had requested that Defendant VVH provide someone
        with database expertise or database access at the site visit

scheduled for March 18, 2015.

77.    That Plaintiffs were prevented from performing their own examination of the data in question during their expert witness's site visit because the expert witness was unable to gain access to the database at issue here due to Defendant VVH not having anyone available with skills and credentials suitable to the examination and because Defendant VVH did not permit adequate time for the inspection to be completed;

78.    That the summary of opinions by Plaintiffs' retained expert, Mr. Penrod, was produced on March 25, 2015, indicating that the complete audit trail had not been produced;

79.    That at her site visit, Ms. Winter was able to examine approximately 406 additional pages of the audit view report never produced to Plaintiffs, spanning the date range through the end of December 2012.  See testimony of Ms. Winter;

80.    That there are yet more additional pages of the audit view that exist beyond December 2012;

81.    That witnesses for Defendant VVH testified that the materials produced to Plaintiffs are not complete, because Defendant VVH imposed date limitations on the materials, excluding part of the audit documents;

82.    That Ms. Winter testified that the materials produced to Plaintiffs are not complete, because those materials omitted an unknown number

of users, including devices and automated processes acting in Mr.

Picco's medical record, thereby excluding categories of audit data

that should be included in a complete audit trail;

83.    That Defendant VVH has repeatedly maintained, both to this court

and to Plaintiffs' counsel, that a complete audit trail has been

produced to Plaintiffs, while Defendant VVH's employees limited the

scope of the materials to be produced to Plaintiffs;

84.    That Defendant VVH has alleged that any changes made to Mr.

Picco's medical record would be captured within the actual medical

record and relied on **Defendant VVH Exhibit 29** in support of that

contention;

85.    That the first three (3) pages of **Defendant VVH Exhibit 29** are from

an unknown patient's medical record, and the edit is referenced on

the third page marked by the word "edit" and a handwritten arrow.

Importantly, the paper chart for this patient does not state what the

edit or change was, who made the edit, when it was made, from

what computer terminal the edit was made, or why; and

86.    That to determine what the edit was on the third page of **Defendant

VVH Exhibit 29**, one must look to the EMR, using a computer

terminal to view the living electronic document on a screen. This

view is represented in the final three pages of the same exhibit,

which importantly is not part of that patient's paper medical

18

record—the only type of record for Mr. Picco to which Plaintiffs have been given access. Thus, one cannot tell what edits or changes were made within an EMR from looking at the face of the paper record, as alleged by Defendant VVH.

## CONCLUSIONS OF LAW

The court concludes:

1.      That a settlement agreement is a contract to end judicial proceedings. DiFrancesco v. Particle Interconnect Corp., 39 P.3d 1243, 1247 (Colo. App. 2001). "Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." Shoels v. Klebold, 375 F.3d 1054, 1060 (10th Cir. 2004). "[A]bsent fraud, duress, undue influence or mistake," neither party is permitted to repudiate a settlement agreement." Agrawal v. Board of Regents of the Univ. of Okla., 336 F. App'x 765, 767 (10th Cir. June 10, 2009) (internal quotation and citation omitted). "A writing is not necessary to create a binding settlement agreement." Brackens v. Sedgwick Claims Management Servs., Inc., 2008 WL 906121, at *2 (D. Colo. Apr. 1, 2008) (citing Bell v. Nugent, 955 P.2d 584, 589 (Colo. App. 1997));

2.      That "[a] trial court has the power to summarily enforce a settlement agreement entered by the litigants while the litigation is pending before it." United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993). See Sumerel v. Goodyear Tire & Rubber Co., 232 P.3d 128,

19

133 (Colo. App. 2009) ("A court may only enforce a settlement agreement if it constitutes an enforceable contract.");

3.      That the term of the Basic Terms of Settlement ***that "counsel for VVH agrees to provide the complete VVH audit trail for Glenn Picco, if in existence"*** was proffered by Defendant VVH and is unambiguous, but that ambiguity in the terms of a contract are to be construed against the party that drafted the terms and, accordingly, any ambiguity in the meaning of the term "the complete audit trail of Glenn Picco" must be construed against Defendant VVH;

4.      That federal law and regulations, in particular 45 C.F.R. §§ 164.105, 164.304, 164.306, 164.308, 164.312, and 170.210, set forth the types of information that a hospital like Defendant VVH is required to record, maintain, and make available;

5.      That 45 C.F.R. § 164.306(a)(1) commands a hospital like Defendant VVH to "[e]nsure the confidentiality, integrity, and availability of all electronic protected health information [that it] creates, receives, maintains, or transmits;"

6.      That 45 C.F.R. § 164.304 provides that "availability" in this context means "that data or information is accessible and useable upon demand by an authorized person;"

7.      That 45 C.F.R. § 164.308(a)(7)(ii) provides that a hospital like Defendant VVH must "[e]stablish and implement procedures to

20

create and maintain retrievable exact copies of electronic protected
health information;"

8.    That 45 C.F.R. § 164.312(b) provides that a hospital like Defendant

VVH must "[i]mplement hardware, software, and/or procedural

mechanisms that record and examine activity in information systems

that contain or use electronic protected health information;"

9.    That during the relevant time period in this case, 45 C.F.R. §

170.210(b) required that "[t]he date, time, patient identification, user

identification . . . must be recorded when electronic health

information is created, modified, accessed, or deleted; and an

indication of which action(s) occurred and by whom must be

recorded;"

10.    That the materials Defendant VVH has produced to Plaintiffs

exclude "an indication of which action(s) occurred and by whom," as

required by 45 C.F.R. § 170.210(b) during the relevant time period in

this case;

11.    That Defendant VVH represents that it has implemented and

observes policies intended to comply with the foregoing regulations

as required by 45 C.F.R. § 164.316;

12.    That Defendant VVH, therefore, represents that it has in its custody

and control a complete record conforming to the characteristics

required in the foregoing regulations;

13.    That no such complete record has been produced to Plaintiffs;

14.   That 21 C.F.R. § 11.10(e) provides that a hospital shall employ
procedures and controls including the "[u]se of secure, computer-
generated, time-stamped audit trails to independently record the
date and time of operator entries and actions that create, modify, or
delete electronic records" and that "[s]uch audit trail documentation
shall be retained for a period at least as long as that required for the
subject electronic records . . . ;"

15.   That 21 C.F.R. § 11.10(k)(2) states that a hospital shall employ
appropriate controls over systems documentation including
"[r]evision and change control procedures to maintain an audit trail
that documents time-sequenced development and modification
of systems documentation;"

16.   That 42 U.S.C. §1320d-2(d)(2) provides that a hospital like
Defendant VVH "shall maintain reasonable and appropriate
administrative, technical, and physical safeguards –(A) to ensure the
integrity and confidentiality of the [health] information; (B) to protect
against any reasonably anticipated–(i) threats or hazards to the
integrity of the information; and (ii) unauthorized uses or disclosures
of the information . . . ;"

17.   That, pursuant to 42 U.S.C. § 1320d(6), "individually identifiable
health information" is defined to include "any information . . . created
or received by a health care provider . . . [that] relates to the past,
present, or future physical or mental health or condition of an

individual, the provision of health care to an individual, or the

past, present, or future payment for the provision of health care to

an individual, and . . . identifies the individual; or . . . can be used to

identify the individual;"

18.     That Fed. R. Civ .P. 34(a)(1)(A) provides for the production of

"designated documents or electronically stored information -

including . . . data or data compilations--stored in any medium from

which information can be obtained either directly or, if necessary,

after translation by the [disclosing] party into a reasonably usable

form;" and

19.     That Defendant VVH's contention, that they have satisfied the Basic

Terms of Settlement by providing Plaintiffs with materials

constituting "building blocks" with which Plaintiffs might themselves

assemble a complete audit trail, is incorrect, because Fed. R. Civ. P.

34(a)(1)(A) provides, first, for obtaining such data directly from the

medium in which it is stored, and second, when necessary, that is

the duty of the disclosing party, not the receiving party, to translate

such information "into a reasonably usable form."

## ORDER

Accordingly, based upon these findings of facts and conclusions of law, this court

**ORDERS:**

1.     That Defendant VVH's Motion to Enforce Settlement Agreement

[docket no. 174] is **DENIED**;

2. That Defendant VVH shall produce to Plaintiffs the following on or before May 26, 2015:

    a. The 406 additional pages that their own expert, Becky Winter, was able to access; and

    b. The complete audit information, up to and including, March 7, 2014, the date of the settlement;

3. That Defendant VVH shall permit entry and inspection in conformity with Fed. R. Civ. P. 34 to permit Plaintiffs' expert witness, David Penrod, to perform a complete forensic examination on the records concerning Plaintiff Glenn Picco, including queries directly to Defendant VVH's database, in order to produce a complete audit trail. Defendant VVH shall provide a database manager and/or other expert with the knowledge, skills, and credentials necessary to assist Mr. Penrod in his task. Defendant VVH shall permit Mr. Penrod up to a maximum of 16 hours to complete his forensic examination unless "good cause" can be shown by Plaintiff to expand the time for such forensic examination;

4. That Defendant VVH should bear the costs for providing a database manager and/or other expert with knowledge, skills, and credentials necessary to assist Mr. Penrod his forensic examination of the records concerning Plaintiff Glenn Picco; and

5. That each party shall pay their own attorney fees and costs for this

24

motion (docket no. 174).

Done this 5th day of May, 2015.

BY THE COURT

<u>s/Michael J. Watanabe</u>
MICHAEL J. WATANABE
U.S. MAGISTRATE JUDGE